BULLIS v. NOBLE.

1. **Estoppel:** FAILURE TO ASSERT TITLE. If a person, without objection, suffers one claiming title to land to enter thereon and expend money in making improvements, he will be thereby estopped from subsequently asserting his own title. (*Lucas* v. *Hart*, 5 Iowa, 415; *Foster* v. *Bigelow*, 24 id. 379.)

2. —— The plea that he had forgotten that his deed or title covered the lot in controversy will not avail to prevent the estoppel.

*Appeal from Winneshiek District Court.*

TUESDAY, JUNE 17.

THIS action is brought by the plaintiff at law to recover of the defendant the possession of a fraction of a certain described

lot in the town of Decorah, Iowa, claiming the same under a tax deed made by the treasurer of the county. The defendant answered and filed a cross-demand in equity, alleging that plaintiff's deed was void because there had been no assessment of the lot; the assessment was void for uncertainty; there was no sale in fact of the lot for taxes ; that the tax deed is void for fraud in the sale; that the defendant and his grant-ors were purchasers for value without notice of plaintiff's title ; and that, after defendant had purchased the lot in good faith without such knowledge, he took possession thereof, and erected a building and made valuable improvements thereon ; that at the time, and previous thereto, the plaintiff knew that defendant was making said erections and improvements ; that plaintiff was at and near where said improvements were being made nearly every day during said time and never made any objection or made known his tax title, or that he had or made any claim to the lot on which said improvements and expendi-tures were being made by defendant, and that plaintiff is thereby estopped from now claiming the same under said tax deed. The cause was tried by the court without a jury. Judgment for defendant. Plaintiff appeals.

*L. Bullis pro se.*

*G. R. Willett* for the appellee.

MILLER, J.— The record contains a large mass of testimony bearing on the various issues made, involving the validity of the tax deed under which the plaintiff claims title, which, in the view we take of the case, it is unnecessary that we should discuss, or to which we need further refer.

The evidence shows a regular chain of title from the orig-inal patentee of the land down to C. E. Dickerman, under whom defendant claims the lot in controversy. The tax deed bears date in February, 1871, showing a sale of the lot in controversy on the 17th day of December, 1862, for the taxes of 1861, to E. Anderson, who, on the 18th day of May,

1863, assigned the certificate of sale to the plaintiff, who held the same until the execution of the tax deed. The defendant purchased the lot of C. E. Dickerman, June 14, 1870, from whom he received a written contract for a conveyance upon final payment under which he went into possession. In the latter part of the year 1870, the defendant had a house 18 by 24 feet, one and a half stories high, moved on the lot, to which he afterward, in January, 1871, erected an addition at a cost of $150. At this time the evidence very clearly establishes that the plaintiff knew of these improvements being made by the defendant and never, until afterward, made it known that he claimed title to the lot. He lived in the same town; his house and office were near to the lot on which these improvements were made. The house that was moved upon the lot was taken from a place from twenty to forty feet west of a public house, to which plaintiff for many years frequently resorted, and was moved past such public house, along the principal business street of the town and placed upon the lot in question. At the time of moving the building to and upon the lot, and fitting it up, the plaintiff is proved to have been frequently there, and he never at any time until March 31, 1871, gave any notice of any claim to or ownership of the lot. He has never paid any taxes thereon since 1862, until in 1871, and after he had asserted his tax title; all the taxes between those years having been paid by the defendant and his grantors.

It is true there is some evidence rebutting the fact of plaintiff's knowledge of the making of the improvements on the lot by the defendant, but in our opinion the great preponderance of the evidence is such as clearly establishes the fact that the plaintiff had such knowledge.

Under the facts of the case we are of opinion that the plaintiff is now estopped from asserting his tax title. The case, in our judgment, is, in all essential respects, like the case of *Lucas* v. *Hart*, 5 Iowa, 415, where it is held that if a man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land, under an

erroneous opinion of title, without making known his claim thereto, he shall not afterward be permitted to assert his legal right against such persons. See, also, *Mahaska Co. R. Co.* v. *D. V. R. Co.*, 28 Iowa, 437.

II. It is urged, however, that the doctrine of estoppel ought not to be applied for the reason, as plaintiff testifies, that he had no personal knowledge that his tax deed or title covered the lot in controversy. The evidence shows that the plaintiff purchased and took an assignment of the certificate of tax sale, long prior to the time when the defendant purchased the lot and entered thereon and made improvements, and has held this certificate down to the time he procured his tax deed thereon. It must be presumed that, when he purchased and took an assignment of the certificate, the plaintiff had knowledge of its contents. The lot is situated in the same village where the plaintiff has for many years resided, and near to his residence and place of business, and still nearer to a public house where he was in the habit of frequenting. He had the most ample opportunities of knowing the situation and condition of the lot and of his own claim or interest therein.

The whole evidence in the case convinces us that he must have had knowledge of these facts, and that all that can be claimed in his behalf is, that he may have forgotten, for the time, that he had a claim on the lot arising out of a sale thereof for taxes, and hence remained silent in reference to it while the defendant was improving the same, etc., which would exonerate the plaintiff from any moral fraud in the premises, but not from the legal consequences of his conduct. In a recent English case (*Slim* v. *Croucher*, 1 De Gex, Fisher & Jones, 518), it appeared that one Hudson, a builder, having finished several houses in Bromley, applied to the plaintiff's solicitors to know if any client of theirs would lend him money on a mortgage of the houses, informing them that the defendant Croucher, to whom the land belonged on which the houses had been erected, had agreed to grant him (Hudson) a lease of it for ninety-eight and a-half years. The solicitors, having read the agreement for a lease, shown them by Hud-

son, required an assurance from Croucher that he would grant a lease according to the agreement. Under these circumstances, Hudson applied to Croucher and informed him of the matter, and thereupon Croucher wrote a letter, and sent it by Hudson to the solicitors, in which he said that he was "quite agreeable" to grant the lease. The plaintiff's solicitors then prepared a lease and notified Croucher and Hudson who called and the lease was duly executed. The plaintiff thereupon loaned Hudson various sums of money on the faith of the lease, for which the latter executed a mortgage on the leased premises, by way of underlease.

It was afterward discovered that prior to all these transactions Croucher had granted a lease to Hudson for ninety-nine years on all the premises comprised in the plaintiff's security, and that this prior lease had been assigned to a stranger for value, by Hudson, and was still subsisting; that Croucher thus had no right to grant the second lease, and that the mortgage was worthless. The plaintiff filed his bill against Croucher and Hudson, charging fraud, concealment, etc., and praying that Croucher be ordered to repay to plaintiff the sums loaned with interest. Croucher denied the charges of fraud, etc., and stated in defense that *at the time of granting of the second lease*, which was the basis of the plaintiff's security, *he had forgotten the grant to Hudson of the prior lease*, and had, in consequence, inadvertently granted the second lease. The court, however, held this to be no excuse, and that the plaintiff was entitled to recover from Croucher the sums loaned Hudson, with interest. See also *Reynolds* v. *Mut. Fire Ins. Co.*, 34 Md. 280; *Stone* v. *Great Western Oil Co.*, 41 Ill. 85; *Adams & Co.* v. *Brown*, 16 Ohio St. 75.

III. Plaintiff further insists that the defendant cannot be allowed to defeat his tax title without tendering or offering to pay the amount necessary to redeem from the tax sale, etc. This position is grounded on section 784 of the Revision. That section, however, applies only where the party claiming adversely to the tax purchaser seeks to defeat the tax deed, by an attack upon the deed or tax sale which would have the

effect to render the tax deed invalid. The doctrine of estoppel which we have been considering and upon which we rest our decision in this case arises upon the facts and circumstances of the case, independently of and unconnected with the tax deed, and is applied without respect to the source of plaintiff's title. The estoppel is an equitable one *in pais,* and is not affected by this section of the statute. But though such tender is not essential to the defense of the defendant, yet it is but equitable that he should pay such sum as would be required in case ot redemption from the tax sale. The judgment of the court below will be so modified and

Affirmed.