CONRAD LICH, Jr., Appellant, v. CONRAD LICH, Sr., *et al.*, Appellees.

**Real Estate:** GIFT: SPECIFIC PERFORMANCE. The defendant, a man advanced in years, being the owner of two hundred and twenty acres of land, and having three sons and a daughter, wrote two of the former, who resided in a distant state, that if they would return home he would defray a part of their traveling expenses, divide his land, with the exception of five or six acres reserved for his own use, into equal parts, apportion the same by each of the children drawing cuts for his share, and then he would ask no more than the fourth part of what they could raise. The absent sons returned home, and, after a residence of some months with their parents, the plaintiff took up his residence in a log-house on a part of the farm that was marked off and designated as for him, and continued to occupy and farm the same for about twelve years, when he made a sale of all his personal property, removed to another state, entered one hundred and sixty acres of land, and remained there a year or two, until he had proved up the same as a homestead. During plaintiff's absence his father rented the land that had been occupied by him to another, but upon plaintiff's return he again took possession. *Held*, that the evidence was insufficient to establish an agreement on the part of defendant to convey to plaintiff as a gift the land occupied by him.

*Appeal from Des Moines District Court.*—HON. CHARLES H. PHELPS, Judge.

MONDAY, OCTOBER 13, 1890.

THE defendant holds the legal title to a farm in Des Moines county, consisting of two hundred and twenty acres. The plaintiff, who is the son of the defendant, has been in the possession of part of the farm for a number of years. The defendant commenced an action of forcible detainer against the son to obtain possession of the land. The plaintiff commenced this action in equity, claiming that in November, 1868, the parties made a verbal contract by which the plaintiff purchased the land of defendant ; that possession was taken under the contract, and the land improved by the plaintiff. A specific performance of the alleged verbal contract was demanded. The action for the possession was enjoined. Issue was taken upon the petition for specific performance. A trial was had upon the merits, and a decree was entered dissolving the injunction, and dismissing the petition. The plaintiff appeals.

*T. J. Trulock* and *A. H. Stutsman*, for appellant.

*Seerley & Clark* and *Theo. Guelich*, for appellee.

ROTHROCK, C. J.—I. A question is made by counsel for appellee as to the right of the plaintiff to maintain the action. It is urged that he should have set up his claim to the land in an answer to the action of forcible detainer, and that the justice of the peace, before whom the proceeding was pending, would have certified the case to the district court as involving the title to real estate, and that all of the rights of the parties could have been determined in that action. The conclusion we have reached upon the merits of the case renders it unnecessary to determine that question, and it is for the interest of the parties that the controversy between them be determined without further litigation.

II. The farm has been owned by the defendant for many years, and we infer from the evidence that it is quite valuable. He had three sons and one daughter. Before the arrangement was made which plaintiff claims was a purchase of part of the farm by him of his

father, the plaintiff and his brother William had removed to the state of California. The plaintiff was then married. The daughter was also married, and resided in the city of Burlington. The other son, named Henry, was unmarried, and lived at home on the farm with his parents. The father and mother desired that William and the plaintiff should return from California, and wrote letters to them to that effect. On the tenth day of June, 1867, the defendant wrote a letter to the plaintiff which was as follows:

"*Dear Children* [ *Conrad and Mary Lich* ]:—We received your welcome letter the eighth of June, and have seen out of it that you are well. You write in your letter that you don't know whether you will get anything if you come back or not. Now, I will tell you boys what I am willing to do with you all. I am willing to defray some of your expenses for your coming back, and then I will divide my land in equal pieces, and then you may draw cuts, each of you, and then I don't ask no more than the fourth part of what you raise, with the exception of about five or six acres, which I reserve for me. You boys can have it all. I can't work much more, and your mother neither. You write me in your letter you are doing pretty well there, and I wouldn't force you to come back if you think that you are doing better there than you could here. We like very much to have you here, and every one of you is welcome. You come, and your wife, and your brother William, and believe us that your wife will be as well respected as any of our other children. If you shouldn't want to come back, let me know it at once, and say yes or no, so I know what I have to do. We had a very cold and wet spring. It delayed us very much, so that I only could plant twenty acres of corn in May month. The rest I had to plant in June. I have a hired hand, and have to pay him twenty-six dollars a month.

"[ Signed in German ]　　　　CONRAD LICH."

The plaintiff and his brother William returned from California in the fall of 1868, and remained during the

winter with their father and mother. In the spring of
1869, the plaintiff took up his residence in a log-house
on the farm, and farmed the part of the land now in
dispute up to the present time, with the exception of an
absence in California for a time.

It is claimed that by a proper construction of the
above letter, and the acts of the parties, the plaintiff
became the equitable owner of the land which he now
claims.   On the other hand, it is claimed by the defend-
ant that the occupancy of the land by plaintiff has been
that of a mere tenant.   It is true, as claimed by the
plaintiff, that a certain part of the farm was marked off
and designated as for him, but the evidence is far from
convincing the mind that the defendant intended that
the occupancy by plaintiff should be that of an owner.
In the light of all the evidence, the offer in the letter to
divide the land in equal parts, and to draw cuts, and
that the boys were to have it all, is as consistent with
the claim of the defendant that he intended to give his
sons permanent homes on the land as tenants at a low
rent, as that he intended to make a final disposition of
his farm.   It is claimed by plaintiff that he put valua-
ble improvements on the land in the belief that he was
the owner, and that defendant knew this, and ought not
now be allowed to take advantage of the labor and out-
lay of the plaintiff for nearly his whole life.   There is
much conflict in the evidence as to the value and nature
of the improvements.   There is good reason for holding
that a greater part of the money paid out for improve-
ments was paid by the defendant.   There is one most
important circumstance which to our minds is inconsist-
ent with the claim made by the plaintiff.   It is this:
In the year 1881, he made a sale and sold out everything
he had in the way of personal property, including some
sheds he had put upon the land, sold his stock and
farming implements, and his household and kitchen
furniture, and removed to California, and remained a
year or two, and entered one hundred and sixty acres
of land, and proved it up, as a homestead.   While he
was gone the defendant rented the land to others.   It is

true the plaintiff claims that the leasing to others by his father was for him, but we think this claim cannot be maintained. When the plaintiff came back again he went on the land. His father refused to rent to anyone when the plaintiff wanted to return to it, and make his home there. It is to be remembered that the alleged parol contract is within the statute of frauds, and the burden is on the plaintiff to take it out of the operation of the statute by showing that it is within the exception of part performance. When this is sought to be established, it has long been held that the proof must be clear and unequivocal. In *Williamson v. Williamson*, 4 Iowa, 279, it is said: "If a party would take a case out of the statute of frauds, upon the ground of a part performance, it is indispensable that the parol contract, agreement or gift should be established by clear, unequivocal and definite testimony, and the acts claimed to be done thereunder should be equally clear and definite, and referable exclusively to the said contract or gift."

The decree of the district court will be AFFIRMED.