A. L. McPHERSON *et al.* v. MARTHA E. BERRY *et al.,* Appellants.

**Estoppel in Pais.** A mother agreed to convey certain land to her sons in consideration of support by them. Those sons proving unable to afford her necessary care, all parties removed to the house of a daughter to whom the mother deeded the land, under like agreement. One son knew of this last agreement before said removal, and made no objection, another has never objected, and a third heard the mother speak of deeding to the daughter and aided in describing the land when the daughter conveyed to a third person, who had no actual notice of the first agreement, upon good consideration. *Held*, there was an absolute abandonment of the first contract, and plaintiffs are estopped by their conduct from asserting any title to the land.

*Appeal from Black Hawk District Court.*—HON. C. F. COUCH, Judge.

THURSDAY, OCTOBER 11, 1894.

ON the the second day of April, 1888, Elizabeth M. McPherson, deceased, who was then the owner in fee of certain lands in Black Hawk county, conveyed the same to the defendant, Martha E. Berry, for the expressed consideration of twelve thousand dollars; the real consideration, however, being an agreement on the part of this defendant to care for and support Elizabeth M. McPherson and her son Henry, who was and is feeble minded, during their natural lives. On about the fourteenth day of January, 1889, the defendant, Martha E. Berry (her husband, G. F. Berry, joining her) conveyed the said land to her brother, W. H. Berry, for the expressed consideration of one thousand, seven hundred and fifty dollars. The real consideration paid by him for the land, however, was

sixteen hundred dollars.   This suit is brought by three sons of Elizabeth McPherson against Martha E. Berry, a daughter, G. F. Berry, the husband of Martha E. Berry, W. H. Berry, and W. L. McPherson, another son of the deceased, to set aside the conveyance before mentioned, quiet the title to the land in them, and to specifically enforce an alleged parol contract for the purchase of land, made by them with their mother before her decease.   They allege in their petition that about the year 1877 they entered into a parol contract with their mother, Elizabeth McPherson, and her husband (who died in the year 1885), by which they were to care for their parents during their natural lives, and in consideration therefor, were to have and inherit in fee, at the date of the decease of the survivor, all the real estate of the mother, and all the personal property owned by either father or mother at the time of the survivor's death.   They further alleged that after the death of their father (the husband of Elizabeth), and about August 1, 1886, they entered into a parol contract with Elizabeth, by which it was agreed that plaintiffs would remain at home and care for her as long as she should live, and that, in consideration therefor, Elizabeth agreed that plaintiffs should own in their own right and have all the property, both real and personal, owned by her at that time, including the real estate in controversy.   They further aver that they carried out the contract on their part, and supported and cared for their mother, until about two months prior to her death, which occurred on the eighteenth day of April 1888, at which time, being old and feeble and in failing health, and at the special instance and request of defendant Martha E. Berry, she left the premises in controversy, on which she had theretofore been residing with the plaintiffs, pursuant to their contracts, and went to reside with

her daughter, Martha, and continued to reside with her until her death. Plaintiffs charge that her leaving was wholly voluntary, and without solicitation on their part, and without any modification of their contracts with her; and they further aver that they were at all times ready and willing to perform the contracts on their part. They allege that they went into the possession of the land under and by virtue of their contracts with their mother, and have at all times since the date of said contracts been in the possession of said lands. They further aver that, at the time of the execution of the deed by Elizabeth McPherson to defendant Martha Berry, she (deceased) was of unsound mind; that the deed was procured through undue influence, and without consideration, and with full knowledge of plaintiff's contract with their mother. They further aver that the deed from Martha Berry to W. H. Berry was executed without consideration, and executed for the purpose of defrauding plaintiffs, and was taken by W. H. Berry with full knowledge and notice, both actual and constructive, of plaintiffs' rights in the real estate. The answer of defendants admits the execution of the deeds from Elizabeth McPherson to Martha E. Berry, and from Martha E. Berry and husband to W. H. Berry, and alleges that they each were upon full and adequate consideration, and denies all other allegations of the petition, and avers that plaintiffs by their conduct, are estopped from claiming title to the land. On the issues thus joined, there was a decree setting aside the deeds and confirming the title,—two-thirds in A. L. and Thomas McPherson, plaintiffs,—dismissing the petition as to Henry McPherson, the other plaintiff, and confirming a one third interest in W. H. Berry; and defendants appeal.—*Reversed.*

*O. C. Miller* and *P. L. Hayzlett* for appellants.

No appearance for appellee.

DEEMER, J.—Elizabeth McPherson died from the effects of a cancer. She had been a sufferer for many months prior to her decease with the disease which finally resulted in her death. There is some evidence tending to show that, at the time of the execution of the deed to Mrs. Berry, she did not possess sufficient capacity of mind to make the conveyance, but the preponderance of the testimony leads us to the conclusion, however, that she fully understood the transaction, its legal effect and consequences, and that she had sufficient mental capacity to execute the instrument. We are not expected to set out the testimony upon which this finding is based, for it would serve no useful purpose. It is sufficient to state our conclusion. There is no evidence to show any influence of any kind exercised by the daughter over her to induce her to make the deed, and the claim that the deed was executed through undue influence is without support in the testimony.

II. We next inquire as to whether the alleged contract between plaintiffs and Mrs. McPherson is established or not. The McPherson family, consisting of Elizabeth, her husband, the plaintiffs, and Mrs. Berry, resided upon the land in controversy for the period of about fifteen years, and continued to reside there until within about two months prior to the death of Mrs. McPherson. They lived together as one family, the plaintiffs doing the larger part of the work, both before and after the death of their father. Alexander McPherson, one of the sons, had the greater part in the management of the farm during the time the family resided there. The father was in ill health, and the family relied upon the plaintiffs to conduct the farm. The death of the father brought about no change in the direction of the business until the removal of Mrs. McPherson and the plaintiff, Henry McPherson, to the house of Mrs. Berry, in February, 1888. To

support the alleged agreement that plaintiffs were to have the farm in consideration of the care and support of their mother, they rely upon declarations of the mother made to various disinterested parties, during her lifetime, to the effect that such an agreement had been made. These declarations, made to many witnesses, both before and after the death of her husband, were to the effect that she had made an agreement with her sons by which, "if they would take care of her during her lifetime, they were to have what was left when she was done with it." "She told the boys that if they would stay with her, and take care of her, then, when she was done with it, what was there, why, they should have it." "She said the boys had made the farm. They had grubbed it out, and, when she was done with it, that they ought to have it." "The agreement was with the boys, that the boys were to stay there, and take care of them [the parents] as long as they lived, and, when they were gone, why, everything was to fall to the boys—the land and everything. That was the agreement." "She said the land belonged to the boys." These statements show that it was the intention of Mrs. McPherson, until the time of her removal to her daughter's home, that her sons should have the land, and, but for that which follows, would be sufficient to sustain the agreement relied upon. They are much stronger than those in *Recknagle v. Schmaltz*, 72 Iowa, 63, 33 N. W. Rep. 365, and *Sample v. Collins*, 81 Iowa, 23, 46 N. W. Rep. 742, and we think are sufficient to show that such an agreement was at one time made.

It appears from the testimony, however, that in February, 1888, Mrs. McPherson grew very much worse. The disease was doing its deadly work, and it became apparent to her children that dissolution was near. It may also be assumed that the plaintiffs were unable to afford the mother the care and attention she

demanded. About this time it was agreed between Mrs. McPherson and the defendant, Mrs. Berry, that she (Mrs. Berry) would take her mother and her brother Henry into her family, and support them as long as they lived, in consideration of which she was to have a deed to the farm in question. Pursuant to this agreement, Mrs. McPherson and the plaintiffs moved into Mrs. Berry's house. They brought with them their household furniture, and the stock which was upon the farm, and lived there,—Mrs. McPherson until her death, Henry until the present time, Alexander until June 10, 1888, and Thomas until January, 1889. The deed from Mrs. McPherson to Mrs. Berry, of date April 2, 1888, was made pursuant to this agreement. Alexander knew of this arrangement between his mother and Mrs. Berry before the removal, did not object to it, and seemingly concurred in what was done. Henry has never complained of the arrangement, and to this day is content with it. While there is no evidence that Thomas knew of this agreement at the time it was made, yet it appears that a few weeks afterward the mother spoke, in his presence, of having the deed made out to Mrs. Berry, in order that a tenant who was distasteful might be removed from the place, and Thomas made no protest. Again, when Mrs. Berry was negotiating a sale to her brother, W. H. Berry, who now holds the title to the land, Thomas and Henry were present, heard the negotiations, and assisted in describing the land to Berry. These facts are sufficient, and, to our minds, show a complete abandonment of the contract entered into by the plaintiffs with their mother. It is manifest that they became convinced that they could not further care for their mother in the condition she was in, and consented that Mrs. Berry might take her, under her agreement with her mother. Whether this be the correct conclusion or not, the plaintiffs are by their conduct clearly estopped from claiming title to the land.

Alexander knew of the arrangement between his mother and Mrs. Berry before Mrs. Berry undertook her care, and made no objection thereto. Thomas was present when Mrs. Berry was negotiating a sale to her brother, and not only did not demur thereto, but assisted in describing the lands to him. Henry was also present, and made no complaint, and does not now object. "If a man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim thereto, he shall not afterward be permitted to assert his legal rights against such person." *Bullis v. Noble*, 36 Iowa, 618; *Lucas v. Hart*, 5 Iowa, 415. Indeed, the principle is so well settled as scarcely to need the citation of authorities. "If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent."

When Mrs. Berry was arranging to take her mother in her distress, and to care for her and her weak minded son during their lives, for the land in controversy, to the knowledge of Alexander McPherson, then was the time for him to have spoken. Then, before she had gone to the annoyance, expense, and trouble of caring for her mother, and when Thomas heard the negotiations between his sister and her brother for the sale of the land to him, was the time for him to have asserted his claim to the land; then, before W. H. Berry had expended any money in the purchase of the land. Having failed to speak when they ought, it would be most inequitable to allow them to speak and assert their rights in the land now. Defendants Mrs. Berry and W. H. Berry had no actual notice of plaintiffs' contract with their mother; and there is nothing outside of their possession of the land which is relied upon as giving notice to subsequent purchasers of their

rights.   Indeed, there is nothing to take their contract
out of the statute of frauds but their alleged possession
and part performance of the contract.   "If a party
would take a case out of the statute of frauds, upon the
ground of a part performance, it is indispensable that
the parol contract, agreement, or gift should be estab-
lished by clear, unequivocal, and distinct testimony;
and the acts claimed to be done thereunder should be
equally clear and definite, and referable exclusively to
the said contract or gift."   *Williamson v. Williamson*,
4 Iowa, 279;  *Lich v. Lich*, 81 Iowa, 84, 46 N. W. Rep.
763.   Plaintiffs' possession of the land, as shown by
the testimony, was not such as to be referable exclu-
sively to their alleged contract.   For years before the
contract was made, plaintiffs had possession of the
land, as much as they had afterward.   Alexander Mc-
Pherson managed and controlled the land and the
farming business before he made the contract with his
parents.   He did no more afterward, unless it can be
said that after the removal of the family to Mrs.
Berry's, he rented it to a tenant, and was in exclusive
possession under this tenant.   The evidence shows,
however, that this tenant rented the land, or under-
stood he was renting the land, of Mrs. McPherson,
through her agent, Alexander, and was holding under
her; and, if inquiry had been made of him, it would
have disclosed this fact.   There was at no time, then,
such a change in the possession of the land as to give
notice to subsequent purchasers of the plaintiffs' con-
tract.   Indeed, it is questionable if there has been
proof of such part performance of the contract as to
take it out of the statute of frauds.   We prefer,
however, to ground our decision on the proposi-
tions that there was an absolute abandonment
of plaintiffs' contract, and that they are now estopped
by their conduct from asserting title to the land.   The
decree of the district court is reversed, and the cause is

remanded for a decree dismissing plaintiffs' petition, or, at defendants' option, they may have a decree in this court. REVERSED.