Collins v. Vandever.

---

COLLINS v. VANDEVER, Adm'r.

In a suit to enforce the specific performance of a contract to convey real estate, parol evidence is admissible to show the application of payments, and to explain the possession, in order to take the contract out of the statute of frauds.

The doctrine of part performance and payment, *assumes* the admissibility of parol evidence to explain and apply them.

That is certain, which can be rendered certain.

The absence of an agreement as to the *specific price* of land, does not vitiate a contract of sale, where there has been a part performance. In such a case, the price rests upon a *quantum meruit*, and either party can enforce it, without difficulty.

Where objection was made to a parol contract for the purchase of land, upon the ground of want of mutuality, it was held to be obviated by the vendee building upon, and taking possession of, the land. It then becomes as well an agreement to *buy* as to *sell*, and could be enforced as well by the vendor as the vendee.

A vendee cannot sleep upon his rights, become delinquent in his payments, and then, at his will, avail himself of the contract, if the advance of the property favors him, or reject it, if the result threatens to be unfavorable.

Where the land in controversy was surveyed in the spring of 1853, and the vendee died in November, 1853, and the administrator received the payment of $150, on the lot, in July, 1854, and suit was brought to enforce performance of the contract, in September, 1854; *Held*, that the vendee had not slept upon his rights, so as to forfeit his contract.

Collins v. Vandever.

In an action to enforce the specific performance of a contract to convey real estate, the complainant is required both to aver and to prove, a demand of the deed, and a payment, or tender, of the money, before suit brought.

But the vendee is not compelled to tender his money, where the vendor has *refused*, upon other grounds than the want of payment, to execute the conveyance; or where the administrator of the vendor is, *by law*, rendered *unable* to execute it, without authority from the court. In either case, it is sufficient to bring the money into court, at the time when the vendee asks that the vendor, or his representative, may be required to convey.

In contracts relating to real estate, where one of the parties has deceased, the statute enables either party to come into court, either to *enforce* the contract, or to obtain, on the part of the administrator, *authority* to make the conveyance.

If both parties are willing to perform the contract, they apply to the court for power only; and neither being in default, nor resisting, the costs are to be disposed of equitably.

If the administrator denies, or resists the performance of the contract, he is to be charged with the costs, if the decree is against him.

An administrator has no power to make a contract for the sale of the real estate of his intestate, except under the authority of the county court.

### *Appeal from the Dubuque District Court.*

THIS suit was brought by Collins, against George Kelley, as administrator of Francis Kelley, to compel the specific performance of a contract for the sale of certain real estate, made by F. Kelley in his lifetime. The petition states, that the deceased, being the owner of a tract of land adjoining the town of Dubuque, which he intended to lay out into lots, when he should have paid off some incumbrances which were upon it, some years ago entered into a verbal agreement with Collins, the petitioner, that Collins might build a house upon a certain part of the tract, and that, when Kelley should lay it out into lots, Collins should have that on which he should build, at the same rate as he, K., got for the rest, and that, upon Collins paying him, he would convey the lot to him; that Collins, relying upon the agreement, built a house and made other improvements, not only with the knowledge of K., but K. lived with him some time, in the house, as a boarder; that, at the time of the agreement, no precise description or boundaries of the lot were agreed upon, but it was stipulated that it should

consist of one acre, at least, in quantity; that Collins should pay partly in work and labor, when K. desired, and the remainder should be paid in cash at such time, and in such amounts, as might be convenient to Collins; that in the spring of 1853, K. caused the said lands to be surveyed into lots, running the lines so as to accommodate the houses of those with whom he had other similar agreements, and run out the lot of Collins by metes and bounds, and recognized and affirmed the bargain with C.; that the lot was laid out to contain one acre, and the price was fixed at two hundred dollars, and C. paid eight dollars in work. Afterward K. died, and George Kelley was appointed administrator. C. paid one hundred and fifty dollars to the administrator, and avers that he has called upon said Kelley, administrator as aforesaid, who would not agree that he should receive a deed for said land, and seeks now to set aside the agreement above set forth, with said Francis Kelley in his lifetime; and also to charge said Collins the full price which said property has enhanced since the making of the agreement. He then avers the bringing the remainder of the money due into court, and prays that the administrator may be decreed to make a conveyance to him of the lot.

The administrator answers, denying the contract *as stated*, but admits that deceased might have given C. permission to build on the lot, but avers that it was upon the condition that C. should pay the taxes, and such reasonable price as the parties might agree to. He denies the price alleged by C., and that it was to be paid partly in labor, and that C. did work for K., and that the size of the lot was to be one acre, and that its locality and description were fixed by the survey. He admits the payment of one hundred and fifty dollars to him, on account of said lot, but denies that it was paid under and by virtue of the contract *as alleged*, and reiterates that C. was to pay a *reasonable sum* when the land was surveyed into lots, and avers that the lot is worth one thousand dollars.

Since this pleading, William Vandever has been appointed

administrator *de bonis non* of Francis Kelley. The cause was heard on the bill, answer, replication, and depositions, and a decree rendered for the complainant, from which the respondent appeals.

*D. S. Wilson*, for the complainants.

*W. Penn. Clarke*, for the respondent.

WOODWARD, J.—This is a petition for specific performance. The cause would fall within the principles of the statute of frauds, were there not a plentitude of evidence showing a part performance, which relieves it from this difficulty. Collins built a house and made other improvements on the land, of which Kelley was fully aware, as he lived in the same house. A small payment was also made to Kelley in his lifetime, and a very considerable one to his administrator. In truth, the contract is not denied, in substance. The only material point on which the administrator dissents from the case made in the bill, is, on the *price* of the lot. He says it was to be a reasonable price, to be settled thereafter; while C. says, it was fixed at two hundred dollars by Francis K. before his death. We are satisfied that the proof sustains the bill.

The statute of frauds is not set up by the defendant, and if it were, the parol evidence, which is objected to, would be admissible to show the application of the payments, and to explain the possession, in order to take the contract out of the statute. The doctrine of part performance and payment, *assumes* the admissibility of parol evidence, to explain and apply them; besides, the contract is substantially admitted, There is, in truth, nothing for the court to add, except to advert to certain objections presented by defendant.

*First.* It is said, that the contract is indefinite and uncertain, both as to the property, and the terms of payment. The contract is natural in its original progress. Collins is permitted to build a house on a certain piece of land, and is to have one acre of ground, to be surveyed and laid out

thereafter. It *was* laid out, and reduced to certainty by metes and bounds. If it had never been laid out, otherwise, he would have been entitled to one acre on which his house stood. The form of this acre would then depend upon circumstances, but unless some circumstance dictated a different course, it would lie in a square, including the house. Thus, it was sufficiently certain, as soon as the house was built. And if this were not so, still *id certum est, quod certum reddi potest;* and the vendor *did* render it certain, by the survey.

*Second.* If the price had been left uncertain, this would not vitiate the contract, for then it would mean a reasonable consideration; it would rest upon a *quantum meruit*, and either party could enforce it without difficulty.

*Third.* It is objected that there is no mutuality. Whatever weight there might have been in this objection, at first, it vanished the moment the house was built, and Collins took possession. It could be enforced as well by the vendor, as by the vendee. It was as well an agreement to *buy*, as to *sell*.

*Fourth.* Again, it is said, that the complainant has slept upon his rights—has awaited until the property is enhanced in value—and for that reason now seeks a performance, to which he is not entitled. We recognize the doctrine, that a vendee cannot sleep upon his rights, become delinquent in his payments, and then, at his will, avail himself of the contract, if the advance of the property favors him, or reject it, if the result threatens to be unfavorable. But how is it with the petitioner? Has he been thus delinquent? The lot was surveyed in the spring of 1853; Francis Kelley died in November, 1853; the administrator received the payment of $150 in July, 1854, and this bill was brought in September, 1854. Here was a fair sequence of facts, keeping the contract in life, and negativing the idea of an abandonment or delinquency. The only specific time at which we can, by possibility, say he should make payment, was after the survey. But the vendor himself took no exception to the non-payment at that time, and his administrator received

three-quarters of the price, more than a year after this, and after the death of the vendor; and the suit was commenced in two months after this payment.

*Fifth.* The more weighty objection of the defendant, and which is made both by demurrer and on the hearing, is, that there was no demand of a deed, and no tender of the money due, before suit. There is something in the bill which was probably intended for an averment of demand, but it is very imperfectly stated, and is wholly unsustained by proof; but this is of no consequence at present, for there is neither averment, nor proof of a tender, before suit, of the balance of the purchase money. It is unquestionably true, that under the general and ordinary rule, the petitioner would be obliged both to aver and to prove a demand of the deed, and a payment or tender of the money. But is there nothing which takes this case out of the common rule? George Kelley was administrator, and as such he *could not* make the deed, without first coming or being brought into court, and *there* obtaining authority to make it; or in other words, to perform the contract of the intestate. To what end, therefore, should there be a tender or demand? On a demand of a deed, the administrator cannot make it; and the vendee is not compelled to tender his money, when the vendor has already *refused* to execute the instrument, or his administrator is, *by law*, rendered unable to execute it. The law does not require vain things, and no utility is perceived in an adherence to the rule, where the reason of the rule ceases. In the case of the existence of adult heirs, who would be able to fulfill the contract of their ancestor, there might be reason for returning to the rule again. In the present and like cases, it seems sufficient to bring the money into court, at the time when the vendee asks that the administrator may be authorized and directed to convey. This he does. The form in which it is averred, is not technical nor professional, it is true, for he should not plead a tender (using his own phrase), but should proffer the money, in open court. As to the truth of this allegation, that he brings the money into court (to which it is objected, that there is no proof before this court), let it be

remembered, that it cannot be supposed that the court rendered the decree, without the deposit of the money, and that the averment is denied neither in the pleadings, nor otherwise.    This court cannot well have further proof.

The statute enables either party to come into court, either to enforce the contract, or to obtain on the part of the administrator, that authority, without which he cannot act.    If both are willing, they apply to the court for power only, and neither being in default, nor resisting, the costs are to be disposed of equitably.    If the administrator either denies or resists, he is to be charged with the costs, if the decree is against him.    In this case, the administrator denies a part of the contract alleged, and, we may say with safety, has resisted the petitioner's right to a deed, even on the payment of the balance of the two hundred dollars.    This he does by his pleadings, if in no other manner.

*Sixth.*  The only matter remaining to be noticed, is the contract and receipt purporting to be executed by Collins, and the administrator, in July, 1854, the part of which relating to the present question, is as follows: "and the party of the second part (Collins) pays to the party of the first part (the administrator), one hundred and fifty dollars in hand, paid in part payment of the lots, the said Thomas Collins agreed to buy from F. Kelley, the price to be settled upon by John Parker and Mason Whoten."    If this paper is introduced as evidence of a new contract for the land, the answer to it is, that the administrator had no authority to make such a contract.    But it was probably introduced to show, that the price was not agreed upon between the original parties. And this it has a tendency to show, whilst at the same time, it is difficult to account for that part of the paper.    Giving it its utmost effect, we could not say that the price or value was to be fixed as of that date, that is, in the year 1854, or subsequently, but should feel constrained to limit the appraisal of the value to the time when Collins took possession, or when the survey was made.    Now, the administrator's answer, admits that petitioner was to pay such reasonable price therefor, as the parties might agree to; and the testi-

mony is perfectly satisfactory that those original parties did agree; and agreed to the sum of two hundred dollars. This evidence must prevail.

The decree of the District Court is affirmed.