## EAST v. CAYUGA LAKE ICE LINE.

(Supreme Court, General Term, Fifth Department.   January 18, 1893.)

1. CONTRACTS—CONSIDERATION.
    An undertaking to deliver all the ice a person might require in his business for a season at a stated price, followed by acceptance, partial delivery, and payment for the amount delivered, is not without consideration, nor void, because the quantity of ice required was indefinite.   Railroad Co. v. Dane, 43 N. Y. 240, and Hurd v. Gill, 45 N. Y. 341, distinguished.

2. STATUTE OF FRAUDS—CONTRACT FOR LONGER THAN ONE YEAR.
    Defendant told plaintiff in November that he wanted to furnish him ice for the coming season on the same terms as last season, to which plaintiff replied, "All right."   In February plaintiff asked defendant if he expected to furnish the ice as talked of, and defendant said that he did.   The season ended January 1st. · Held, that the contract was made in February, and was, therefore, not within the statute of frauds, as a contract not to be performed within a year.

Appeal from Monroe county court.

Action by Henry R. East against the Cayuga Lake Ice Line for breach of contract to deliver ice.   Judgment of nonsuit, from which, and an order denying a new trial, plaintiff appeals.   Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

W. B. Halleck, for appellant.
W. W. Webb, for respondent.

LEWIS, J.   This action was originally brought in the municipal court of the city of Rochester, and judgment was rendered for the plaintiff.   An appeal was taken from the judgment to the county court of Monroe county for a new trial, and at the close of the plaintiff's evidence a nonsuit was granted.   A motion was thereupon made upon the minutes for a new trial, which was denied, and judgment entered for the defendant, and an appeal was taken from said judment and order.

The plaintiff was a dealer in meats and provisions in the city of Rochester, and required and used in his business large quantities of ice.

The defendant is a domestic corporation engaged in the business of dealing in ice in the city of Rochester, and furnished to the plaintiff the ice required for his business during the ice season of the year 1888, under a contract between the parties, made as follows: In the spring of the year 1888 the plaintiff and F. W. Hawley, general manager of the defendant, had a conversation in regard to the defendant's furnishing the plaintiff with the ice he should require for his business for that season, and soon thereafter the defendant sent to the plaintiff a letter, of which the following is a copy:

"Rochester, N. Y., March 1, 1888.

"Henry R. East, Rochester, N. Y.—Dear Sir: Referring to our conversation of to-day, I beg to say that from this date until we cease loading ice at Cayuga lake for the season we will deliver all you require free of all charges on any side track in Rochester used by the New York Central for unloading bulk freight at fifty cents per ton. At the expiration of that time will furnish you ice now in store on the upper Genesee river free of all charges at our ice station at the corner of Scio street and the N. Y. C. & H. R. R. R. at one dollar per ton. This price applies to not to exceed five hundred tons of ice. Ice will be furnished from the upper Genesee to you in carloads on any side track used by the New York Central for unloading bulk freight at the same price.

"Yours respectfully, F. W. Hawley, General Manager."

The plaintiff accepted the proposition made to him by this letter, and the defendant furnished the plaintiff with all the ice he required in his business for that season, amounting to about 400 tons, at the prices named. The parties met again in the month of November, 1888, and Mr. Hawley said: "Mr. East, I don't want you to make any contract for your ice next season. I want to furnish you the same as I have this season;" and Mr. East replied, "All right, Mr. Hawley." Plaintiff testified: "I saw Mr. Hawley again, think it was in February, 1889. I called on Mr. Hawley and asked him if that was going to be all right for next season,—the same price as last, that we had talked on, and he said: 'That is all right,' and I said: 'All right, Mr. Hawley.'" Upon his cross-examination, he testified: 'When I met him in the office, I asked him if it would be all right for ice for this season, the same as last,—the same price,—and he said: 'Yes, that is all right,' and I said: 'All right, Mr. Hawley.'" The defendant from that time on until the fore part of August following furnished to the plaintiff the ice required in his business, and plaintiff paid the defendant in monthly payments therefor the price agreed upon. In the month of May, 1889, Mr. Hawley called upon Mr. East, and the following conversation was had. Mr. Hawley said: "Mr. East, can't you pay me a little more for the ice than you were paying me?" Mr. East replied: "No, I wouldn't think that would be right. It wouldn't be business for you to ask me to pay more than what we had agreed on; but I was perfectly willing to do what I had agreed to. I did not think it would be right to do anything different." And Mr. Hawley replied: "All right, you shall have your ice, but you are getting it cheaper than any other man in town." The defendant stopped delivering ice to the plaintiff on the 7th of August, and, although requested so to do, refused thereafter to furnish any more ice to the plaintiff. The plaintiff, requiring ice in his business for the balance of that season, purchased it of other dealers, and

was compelled to and did pay therefor $178 more than the same quantity would have cost at the price fixed in the contract with the defendant.

At the close of the plaintiff's case he was nonsuited on the ground that he had failed to prove a valid contract. We are not able to see in what respect the plaintiff failed to make a case. The respondent's counsel suggests that the contract was without consideration, and therefore void. There was on the part of the defendant an offer to sell and deliver to the plaintiff all the ice he should require in his business for the season at a price stated. The plaintiff agreed to receive the ice, and, although there was nothing said as to payment, there was a clear implication of a promise on his part to pay for the ice the price mentioned. This was followed by a delivery of ice for a portion of the season, and payment for the amount delivered at the agreed price. The offer on the part of the defendant, and the acceptance thereof by the plaintiff, followed by the delivery of the ice, made, we think, a binding contract. The respondent further contends that the contract was void for the reason that there was no agreement on plaintiff's part to take any specified amount of ice. We do not so interpret the contract. It is clear from the language used, in the light of the surrounding circumstances, that it was understood by the parties that the company was to furnish all the ice the plaintiff required in his business for the season of 1889, and the plaintiff agreed to receive the ice and pay for it. It was not optional with the plaintiff to order of the defendant a part of the ice which he required, and then purchase of other dealers the balance needed in his business. He was to take of the defendant what he required in his business; not a part, but all. The plaintiff testified that the exact amount of ice was not mentioned or agreed upon, for the obvious reason that he did not know how much he would require. The amount would depend upon the condition of the weather. If it should be very warm, he would need more than he would if the weather was cool; but, in any event, he would need ice. That was understood, and was not left in doubt. While the exact duration of the season was uncertain, that there would be a season during which plaintiff would require ice was not problematical. Ice seasons vary in duration. The season of 1888 lasted from March until the following January; the season of 1889 was from March to the latter part of December. Before the close of the season defendant refused to perform its contract, and damage ensued to the plaintiff, and there would seem to be no reason why the defendant is not liable to the plaintiff for the damages sustained by the defendant's breach of contract. The facts in the case of Wells v. Alexandre, 130 N. Y. 642, 29 N. E. Rep. 142, are quite like the facts in the case at bar. There the plaintiff proposed in writing to furnish the defendants' steamers, which were making regular trips during the year between certain ports, with coal at a price named for the year 1888, quantity not being specified. The proposal was accepted. Coal was delivered as needed until June 25th, when the defendants sold and ceased to operate their steamers, and declined to receive coal thereafter. The purchaser continued to make regular trips with the steamers as before. In an action to recover damages for breach

of the contract it was held that the plaintiff was entitled to recover. In that case the quantity of coal to be furnished was not specified, but the amount was all that should be required to operate the steamers during that year. Here the amount of ice to be delivered was all that the plaintiff required in his business during the season. The sale of the steamers by the defendants was held not to have relieved them from the performance of the contract upon their part. The cases of Railroad Co. v. Dane, 43 N. Y. 240, and Hurd v. Gill, 45 N. Y. 341, referred to by the respondent's counsel, are distinguishable from the case at bar in the fact that in the first case, whether any freight was furnished for transportation to the plaintiff, was left wholly optional with the defendant, and in the other case it was optional with him whether he would take any sand. Not so here. Under the terms of this contract the plaintiff was obligated to take of the defendant all the ice his business required for the season, and pay therefor the stipulated price. The respondent contends that the contract was void, for the reason that by its terms it was not to be performed within one year from the making thereof. While the parties had a conversation in reference to the contract in the fall of 1888, the contract was made, we think, in February, 1889, and it was to furnish ice for the following season, which the evidence shows would end by the 1st of January, 1890, so that the contract was to be performed within a year. It was error, we think, to take the case from the jury, and the judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event. All concur.