W. O. MITCHELL v. EDWIN F. COLBY, *et al.*, Appellants.

**Statute of Frauds.** An agreement to transfer lands in consideration of fees for settling an estate and the signing of a bond, is not within the statute, where the consideration is executed, though the order approving the settlement of the estate is not yet made.

**Attorney and Client.** Contracts between lawyer and client involving the purchase of property obtained by the litigation will be upheld when the consideration is adequate and the attorney acts fairly, openly and in good faith.

DEEMER, J., took no part.

*Appeal from Adams District Court.*—HON. H. E. DEEMER, Judge.

WEDNESDAY, MAY 29, 1895.

Action in equity to compel specific performance of an alleged contract, and to cancel certain conveyances of real estate. Decree was entered in favor of the plaintiff, from which the defendants appeal.—*Affirmed.*

*Thos. L. Maxwell* and *Davis & Wells* for appellants.

*W. O. Mitchell* and *H. T. Granger* for appellee.

Given, C. J.—I. Plaintiff filed an amended abstract, the first fifteen pages of which set out at length the findings of facts, conclusions of law, and order for decree, as signed and filed by the trial judge. Defendants moved to strike out this part of the amended abstract, upon the grounds that it purports to be the opinion of the trial judge, and is no part of the evidence, pleadings, or record in the case. The case was taken under advisement, decree to be entered in vacation; and, in vacation, the trial judge filed his findings and

order, as set out in the amended abstract. While the document thus signed and filed by the judge is, in form and effect, the opinion of this court, it is also a statement of the findings of facts and of conclusions of law made by the court, and the order of the court specifically directed as to the decree to be entered. It is unquestionably a part of the record in the case, and the motion to strike is therefore overruled.

II. The record before us is quite voluminous and is elaborated at great length in the arguments for appellants. After a careful reading, we gather the following as a sufficient statement of the case for an understanding of the controlling questions involved: The following facts appear without controversy, or are fairly established by the evidence: In November, 1891, Moses Colby died without children, leaving his wife, Harriet, surviving him. He left a large estate in real and personal property, partly in Kane county, Illinois, and partly in Adams county, Iowa, all of the value of about seventy thousand dollars. So far as has been ascertained, he left no will. He held a mortgage on certain real estate in Corning, Adams county, Iowa, known in the record as the "Beymer Property," which mortgage had been foreclosed, and sale made thereof, from which the time to redeem expired on the sixth of July, 1892. Deceased had formerly resided in Kane county, Illinois, and his remains were taken from Corning to Illinois for burial, accompanied by Mrs. Colby. Mrs. Colby thereafter remained in Illinois, and, at her instance, administration was granted upon the estate in Kane county, one Laban Hayward being appointed administrator. The defendant J. N. Roland was appointed ancillary administrator by the court of Adams county, Iowa. The defendants in this action, other than J. N. and Nellie I. Roland, are children or descendants of the brothers and sisters of deceased, and entitled to share in the distribution of his estate.

Under the laws of this state, if Mr. Colby was a resident thereof at the time of his death these heirs would take one-half of his estate, both real and personal, but if he was a resident of the state of Illinois their share in the estate would be much less. Mr. Colby having resided in Adams county, Iowa, for some time before his death, it was to the interest of these heirs to establish that his domicile was in this state at the time of his death. The defendant heirs, through Mr. True W. Townsend, of Boston, Mass., their attorney in fact, employed the plaintiff (then, and for many years prior, a practicing attorney, residing at Corning, Iowa,) to represent their interest in said estate. They entered into a written contract whereby plaintiff agreed to take charge of litigation growing out of said estate, and give it his best efforts and attention, in consideration of which it was agreed that he should have one hundred dollars retainer fee, to be paid in cash, one hundred dollars trial fee in district court, and ten per cent. additional on all moneys or property recovered for the heirs from said estate, "whether by suit, compromise, or settlement." It was also agreed that, if the heirs received only an interest in the Illinois real estate, plaintiff was to receive no per cent. on the amount thereof. Under this employment, plaintiff proceeded at once to give all proper and necessary attention to the litigation in the courts of Illinois and Iowa with respect to said estate. After a time, overtures for a settlement between the widow and these heirs as to the distribution of the estate began to be made. The defendant J. N. Roland, of Corning, Iowa, ancillary administrator, was, with the sanction of Mr. Townsend, authorized to go to Illinois, and see what compromise the widow was willing to make, and it was agreed that he should have one-half of all over twenty thousand dollars that he could procure for these heirs. He went to Illinois, but accomplished nothing more

than to learn that Mrs. Colby had authorized her attorneys at Corning to make an offer of settlement. The plaintiff thereafter took an active part in trying to bring about a compromise between the widow and these heirs, and, after an extensive correspondence and several interviews, Mr. Townsend, the plaintiff, the attorney in Illinois for Mrs. Colby, and the principal administrator met in Aurora, Ill., and, after extended negotiations, agreed upon terms of settlement, which were reduced to writing, and signed by Mrs. Colby, Mr. Hayward, administrator, and Mr. Townsend, attorney in fact, on the twenty-second day of September, 1892. By said writing it was agreed that these heirs should have twenty-one thousand dollars, and the Beymer property, in Corning, Iowa,—Mrs. Colby to have all the residue and remainder of the estate,—and at the coming January term of the district court of Adams county, Iowa, an order should be entered for such distribution of the estate. It was also agreed that J. N. Roland, who held the legal title to the Beymer property, should convey the same to the heirs, and that all costs and expenses of the settlement of the estate in Iowa should be paid by Mrs. Colby, or the Illinois administrator. It was further agreed that the heirs should receive, as part payment of said twenty-one thousand dollars, certain notes then in the hands of Mr. Roland as administrator, as shown by his report of July 2, 1892, "or the proceeds thereof, if any, since collected, provided that the principal sum of the same shall not exceed six thousand one hundred and twenty dollars, and which said notes shall be so received by them as so much payment of the sum of twenty-one thousand dollars, at the value of six thousand dollars." Said agreement contains this further stipulation: "It is further agreed that, prior to the payment of any portion of the said twenty-one thousand dollars, said second party shall deliver to the said first party a good and sufficient bond, signed by themselves,

as principal, and by W. O. Mitchell, as surety, in the penal sum of thirty thousand dollars, and that a bond executed July 18, 1892, shall be the one taken in consummation thereof." It was further agreed that these heirs should convey to the widow all right, title, and interest to the property of deceased in Aurora, Ill. And it was agreed, on the part of Mrs. Colby, "that no claim of heirship should be made by William and Mattie Colby, who are the children of one William H. Colby, deceased, who was the foster child of said Moses Colby." It will be seen that by this agreement the heirs were to have the Beymer property, the notes in the hands of Roland, and the balance in money necessary to make twenty-one thousand dollars. Mr. Townsend was evidently anxious to take back with him, to the East, some money for the heirs; but, as matters stood, he would have nothing until the terms of settlement were confirmed in an order of court at the coming January term, and he had nothing from which to immediately realize cash, except said notes. While at Aurora, and prior to the execution of said contract of settlement, Mr. Townsend (as attorney in fact) and plaintiff entered into negotiations for a settlement of plaintiff's fees as attorney, and for his going upon the thirty thousand dollars indemnity bond to the estate. Whatever may have been the ability of these heirs to give this bond, it is evident that the plaintiff was to be recompensed for assuming the liability that he did in signing that bond as surety. Plaintiff alleges that at the time of said settlement, and as an inducement to plaintiff to sign said bond, and to settle the fees to which he was entitled, an agreement was made between him and Townsend, attorney in fact, of which a memorandum in writing was made and assented to as a part of said settlement upon plaintiff's signing said bond; that it was agreed that in consideration of plaintiff's services the Beymer property was to be conveyed to him

by Mr. Roland, and that said notes, together with the interest accrued thereon since July 2, 1892, were also to be transferred to him,—he to pay to said heirs, "within ten days from the receipt of said notes, and mortgages securing the same, duly assigned to him, the sum of five thousand dollars in cash." This memorandum was not signed by either party, and the defendants denied that such an agreement was made. After these transactions at Aurora, Mr. Townsend and the plaintiff came together to Corning, Iowa, with a view to plaintiff's getting the five thousand dollars which he was to pay to Townsend for the heirs. Roland insisted on being paid one-half of all in excess of twenty thousand dollars, while the plaintiff denied his right to any compensation, but agreed that, if Townsend requested it, he would pay Roland the one hundred dollars. Plaintiff offered to pay Roland the one hundred dollars, but Roland refused to receive it, and failed to convey the Beymer property, or to deliver over said promissory notes and mortgages. After considerable negotiation with Roland, and a failure to reach a satisfactory result, Townsend agreed that Roland should have the Beymer property and said promissory notes and mortgages for seven thousand five hundred dollars (the notes being estimated at five thousand eight hundred dollars); and thereupon Roland, as administrator, conveyed the Beymer property to these heirs, and Townsend, as their attorney in fact, conveyed the same to the defendant Nellie I. Roland, wife of John N. Roland. These are the deeds which the plaintiff seeks to have canceled.

III. We now inquire whether the plaintiff has established his allegations of an agreement between himself and Townsend. The evidence upon this issue, though somewhat extended, is not conflicting. The plaintiff testified unqualifiedly to an agreement such as he alleges, and is corroborated by several witnesses present. It is true, Mr. Townsend

denies the agreement, but, on further examination, admits the agreement, in all particulars, as claimed by the plaintiff, except that plaintiff was to have ten days in which to pay the five thousand dollars, and that there was any agreement to compensate plaintiff for signing the bond. In view of all the circumstances and desires of the parties, it was entirely reasonable that they should have made just such an agreement as plaintiff claims. It was made with full knowledge upon the part of Mr. Townsend of all facts entering into the transaction. The plaintiff had fully and fairly imparted all information in his possession touching the property of the estate, its value, and the probable duration and result of litigation. The consideration moving from the plaintiff for the transfer to him of the Beymer property and notes was full and adequate. Plaintiff being the attorney for the parties with whom he was dealing, we have scanned the transaction with unusual care; and, holding the plaintiff, as we do, to the strictest rule that obtains between attorney and client, we reach the conclusion that he has not only established the agreement as alleged, but that it was entered into with the utmost "fairness, adequacy, and equity," and without any fraud upon his part. We are satisfied that, had it not been for the unwarranted demand of Mr. Roland, the agreement would have been carried out in good faith. The greater part of the one hundred and thirty-six pages of argument submitted by defendant is addressed to their claim of illegality and fraud in this contract, upon a variety of reasons presented in the argument, none of which, we think, has support in the record.

IV. Defendants contend that as this agreement is in part for a transfer of the interest in lands, and was not in writing signed by the parties, it is within the

statute of frauds, and that, therefore, all the evidence introduced to establish it is inadmissible. Plaintiff had signed the thirty thousand dollar bond, and rendered nearly all the services which he was to render as consideration to the heirs. All that remained for him to do was to take the formal order of the court according to the terms of settlement. Part of the consideration had been received by the heirs from plaintiff, and therefore the case is within the exception provided in the statute to the prohibition upon which defendants relied. It is contended that plaintiff had an adequate remedy at law, and therefore is not entitled to maintain this action. The action is not only to cancel conveyances of real estate, but to compel conveyances thereof in performance of the alleged contract. If plaintiff is entitled to the real estate, equity will not deny it to him merely because he may recover its value in an action at law.

V. It is contended on behalf of the defendants Roland that the plaintiff is estopped to ask the conveyance of the notes and Beymer property upon the ground that plaintiff had told Roland, shortly before he (Roland) made the agreement with Townsend, that he (Mitchell) had not traded, that he and Townsend were three hundred dollars apart, and that he was going to let Townsend sweat a few days. We think the evidence entirely fails to show grounds of estoppel. Roland knew of all the transactions up to that time, and that it was only his demand for compensation that stood in the way of a settlement between the plaintiff and Townsend according to their agreement. He knew of plaintiff's objection to his being paid one-half of the excess over twenty thousand dollars, and, we think, was very ready to embrace the first opportunity to get the papers and notes beyond the reach of the plaintiff, and under his control. The district court entered decree canceling said conveyances from Roland

to the heirs, and from them to Nellie I. Roland, for the Beymer property, and decreed the same to the plaintiff, and gave him judgment against the heirs for one thousand six hundred dollars,—the value of said promissory notes in excess of the five thousand dollars which plaintiff was bound to pay to the heirs upon delivery of the notes to him. The decree also required the plaintiff to pay into court one hundred dollars, to be paid to the defendant J. N. Roland, as per plaintiff's agreement to pay that amount to him; the decree providing that, if Roland refused to receive the same, it be paid to the other defendants. Our examination of the case leads us to the conclusion that this decree is fully sustained by the evidence, that it is in accordance with law, and effectuates justice between the parties. It is therefore *affirmed.*

Deemer, J., took no part.