John C. Daily, by His Next Friend, James C. Daily, Appellee, v. Sarah T. Minnick et al., Appellants.

117   563
133   110
e133  115

117   563
131    19

117   563
136   496

117   563
143   181

Consideration for Conveyance: PRIVILEGE OF NAMING CHILD. The privilege of naming a child is a valid and legal consideration for a promise to convey land to the child.

SAME: Where deceased agreed to convey forty acres of land to a child in consideration of being allowed to name the child, and at the time of the agreement he did not own any land which could be appropriated to the contract, but after the child was named he purchased a particular forty acres of land, and thereafter, by his declarations and otherwise, showed that he intended to appropriate such land to the fulfillment of the contract, the original consideration, though past, was sufficient to support such new agreement made by deceased after purchasing the land, so as to render the contract enforceable. McClain, J., dissenting.

RATIFICATION BY CHILD: Privity. Where parents contracted to allow deceased to name their child in consideration of deceased's agreement to convey land to the child, and the child was named, and continued to bear the name down to the bringing of the suit by him to obtain the land, he thereby ratified the contract made for him by his parents, and there was sufficient privity between him and the promisee to entitle him to sue.

UNCERTAINTY OF CONTRACT: Land not owned at time of promise. Where deceased agreed to convey land to a child in consideration of his being allowed to name the child, the fact that deceased did not own the land at the time of making the agreement did not render the contract void for uncertainty, where he subsequently purchased land with which, according to his declarations, it appeared he intended to fulfill the contract, since it is only necessary that the subject matter of a contract enforceable in equity be ascertained when the court is called on to act.

MUTUALITY: The contract was not void for want of mutuality.

Statute of frauds. Where deceased orally agreed to convey land to a child in consideration of being allowed to name the child, and the child was named according to his wishes, and continued to bear such name down to the trial of the action to enforce the contract, such contract was not void under the statute

of frauds, since the naming of the child and his bearing the name constituted a payment of the purchase price of the land, within the exception prescribed by Code, section 4626, declaring that an oral contract to convey land shall not be void where the purchase money or any portion thereof, has been received by the vendor.

MCCLAIN, J., dissenting.

*Appeal from Marion District Court.*—HON. J. H. APPLEGATE, Judge.

WEDNESDAY, OCTOBER 15, 1902.

ACTION to quiet title. Plaintiff, who is a minor, suing by his father, James C. Daily, as his next friend, brings this action to quiet title to 40 acres of land, against the defendants, who are the heirs at law of John Cochrane, deceased, who during his lifetime was the owner of the land. The defendants deny plaintiff's title; and C. A. Minnick, the husband of one of the heirs of Cochrane, who was also made a defendant, by cross-petition asks to have title to an undivided interest in the property quieted in him, claiming to be the owner thereof by conveyances from the several heirs. The trial court quieted title in the plaintiff, and defendants appeal.—*Affirmed.*

*Kinkead, Mentzer & Granger* for appellants.

*Hayes & Amos* for appellee.

DEEMER, J.—Plaintiff's claim of title to the land is based upon an alleged agreement between his parents and John Cochrane, during his lifetime, whereby he, the said Cochrane, orally promised that, if they would name the plaintiff (then a small infant) after him (Cochrane), he would give the child 40 acres of land. No particular 40 acres was named, nor did Cochrane own the land now claimed by the plaintiff at the time the promise was made; but it is contended that he subse-

quently purchased the subject-matter of the litigation for the plaintiff, taking title thereto, however, in his own name, and that ever thereafter he, by acts and declarations, recognized the tract as the property of plaintiff, and gave the possession thereof to the father to hold for him (plaintiff). Bearing on this last proposition, it appears from the evidence that James C. Daily, the father of plaintiff, had lived with Cochrane, as a member of his family, from childhood until his marriage, and that for some time thereafter he and his wife continued to reside with Cochrane, who in the meantime had become a widower. He was treated by Cochrane as a son, and after his marriage had largely the control of Cochrane's business affairs; acting with him in carrying on the farm on which they lived, in making contracts for him, and otherwise acting as his agent and assistant. James C. Daily suggested to Cochrane the purchase of the 40 acres in question as a suitable tract to be used in performance of the original agreement to give plaintiff 40 acres of land for his name, but the purchase was made by Cochrane in his own way and with his own money, and the title was taken in his name. Subsequently he discussed with James C. Daily the management of this 40-acre tract, permitted him to cut timber therefrom and to raise crops thereon, and from time to time declared to others that he intended the tract for the plaintiff; saying that he would deed it to him when the latter was old enough, but would not give it to plaintiff's father, for fear he would squander it. Daily not only cut timber and raised crops upon the land, but he also opened a coal bank thereon, cleared it, and dug a well thereon. Cochrane built a house upon the land with Daily's consent, which was occupied for a time, at least, by Cochrane's brother-in-law. The declarations made by Cochrane generally related, it is true, to an intent to give the land to plaintiff in the future, but it is clear to our minds that they amounted to a recognition of the contract, and a designation of the land

intended to be conveyed in fulfillment thereof. It is suggested that all of these matters may have had reference to some other arrangement between Cochrane and plaintiff's father, but this is purely speculative, for no other arrangements or agreements are shown.

The promise to convey the land was oral, and is clearly within the statute of frauds, unless it be shown that there has been part performance, or payment of the purchase price, or a part thereof, as provided in sections 4625 and 4626 of the Code. That the privilege of naming a child is a valid and legal consideration for a promise is well established by all the authorities. See *Eaton v. Libbey*, 165 Mass. 218 (42 N. E. Rep. 1127, 52 Am. St. Rep. 511); *Wolford v. Powers*, 85 Ind. 297 (44 Am. Rep. 16); *Parks v. Francis*, 50 Vt. 626 (28 Am. Rep. 517); *Nightengale v. Withington*, 15 Mass. 272, (8 Am. Dec. 101). In making such contracts, parents act as the natural guardians of the child, and are presumed to act for its interests. The child was named according to the agreement, and plaintiff has continued to bear the name down to the present, and by the bringing of this suit has ratified the contract made by his parents. Moreover, there was such privity between plaintiff and the promisee that he (the plaintiff) may enforce the contract, although not made directly by him. *Dutton v. Poole*, 2 Lev. 210; *Todd v. Weber*, 95 N. Y. 193 (47 Am. Rep. 20); *Vrooman v. Turner*, 69 N. Y. 280 (25 Am. Rep. 195).

But it is said that at the time the contract was made it was so uncertain and indefinite that it cannot be enforced, that no particular tract was designated at the time the contract was entered into, and that therefore it is void. The mere fact that Cochrane did not then own the land which he agreed to convey to plaintiff is not controlling. One may agree to procure land for another, or to sell land which he does not own; and the question is not whether or not the contract was uncertain

when executed, but, may a court of equity put its finger on the subject-matter of the contract when it is called upon to act? *Thompson v. Myrick*, 20 Minn. 205 (Gil. 184); *Dresel v. Jordan*, 104 Mass. 407; *Allerton v. Johnson*, 3 Sandf. Ch. 72; *East v. Ice Co.*, 66 Hun, 636 (21 N. Y. Supp. 887); *Collins v. Vandever*, 1 Iowa, 573; *Ottumwa, etc. Railway Co. v. McWilliams*, 71 Iowa, 164. It goes without saying that if the contract when executed, be so uncertain as to subject-matter, that the court cannot identify it in the light of admissible extrinsic evidence and it so remains at the time action is brought it cannot be enforced, or as some of the authorities put it, it is void. But ambiguity or uncertainty may be removed by the acts, conduct, declarations, or agreements of the parties. *Wallace v. Ryan*, 93 Iowa, 115. In other words, an uncertain agreement may be so supplemented by subsequent acts, agreements, or declarations of the parties as to make it certain and enforceable. *Alabama G. S. R. Co. v. North & S. A. R. Co.*, 84 Ala. 570 (3 South. Rep. 286, 5 Am. St. Rep. 401); *Stone v. Clark*, 1 Metc. (Mass.) 378 (35 Am. Dec. 370); *Lovejoy v. Lovett*, 124 Mass. 270. Cochrane's declaration in this case as to the land he intended to convey to the plaintiff in fulfillment of his promise was both a construction and an execution of his contract, and cleared the agreement of all uncertainty theretofore existing. It is fundamental that the acts of practical construction placed upon a contract by the parties thereto are binding, and may be resorted to to relieve it from doubt and uncertainty. *Kelley v. Andrews*, 102 Iowa, 119. This is simply an extension of the maxim, "*Id certum est quod certum*," etc. The case is not different from that of a lease to one for so many years as he shall name. In such a case, although the term is at present uncertain, yet when the lessee names the term it is then reduced to a certainty. Broom, Legal Maxims, p., *599. So if A should give B money with which to purchase unidentified land, and B should make a purchase,

and thereafter say, "This is the land I purchased for you," equity would compel him to make conveyance thereof to A.

These illustrations simply confirm the principle which should be applied to the case now before us. But another aspect of the case is even more conclusive .than the one we are now considering. Plaintiff's parents at the request of Cochrane named him (plaintiff) after Cochrane. Thereafter, and in consideration therefor, Cochrane agreed to give plaintiff a certain definite 40 acres of land. 4 This is the effect of the transaction between these parties if we treat the original contract as void for uncertainty. Defendant received the benefit of the name, and the parents parted with the right to give the child such name as they might choose. This as has been seen, is a valuable consideration. At the time Cochrane agreed to give the child 40 acres of land, but the contract was invalid because of uncertainty of subject-matter. Thereafter Cochrane agreed to give the child a certain and definite 40 acres, pursuant to his original promise, and because of the consideration passing at that time. Is such a contract valid? The authorities furnish no uncertain answer to this proposition. It is quite generally held that a mere moral obligation is not sufficient consideration to support a subsequent promise, but it is as generally held that a past legal consideration, especially where the past consideration was based upon a previous request, or a new promise when the original is in violation of the statute of frauds, or otherwise illegal, when the illegality is not based upon public policy or positive statute, is sufficient. Indeed, there seems to be no dissent from this doctrine. *Boothe v. Fitzpatrick*, 36 Vt. 681; *Jilson v. Gilbert*, 26 Wis. 637 (7 Am. Rep. 100); *Silverthorn v. Wylie*, 96 Wis. 69 (71 N. W. Rep. 107); *Pool v. Horner*, — Md. — (20 Atl. Rep. 1036), and authorities collected in an excellent note found in 53 L. R. A. 353.

This view of the case seems to settle the validity of the contract, unless it be for the statute of frauds, which requires contracts relating to an interest in lands to be in writing. That the contract is unenforceable under this statute is certain, unless it be found that the purchase money, or some part thereof, has been paid, or that possession of the property was taken by the vendee, with the consent of the vendor, under the exceptions to that statute found in section 4626 of the Code. These exceptions did not prevail at common law; hence authorities from other states do not give us much light on the question at issue, and are likely to be misleading. At common law, payment of the consideration was not regarded as part performance, so as to take the case out of the statute. Brown, Statutes of Frauds, section 463; *Puterbaugh v. Puterbaugh*, 131 Ind. 288 (30 N. E. Rep. 519, 15 L. R. A. 341); *Townsend v. Huston*, 1 Har. 532 (Del.) 27 Am. Dec. 745), and cases cited. The reason for this was that nothing was regarded which did not put the party performing in such a position that a fraud would be allowed to be practiced upon him if the contract was not enforced. The money or the purchase price could be recovered back, and the parties thus restored to their original position. This rule has not received universal assent in this country. *Rhodes v. Rhodes*, 3 Sandf. Ch. 279. It fully explains the holding, however, in *Maddison v. Alderson*, 8 App. Cas. 467; *Ellis v. Carey*, 74 Wis. 176, (42 N. W. Rep. 252, 4 L. R. A. 55, 17 Am. St. Rep. 125); and other like cases. In this state and in Delaware, however, the statute, in express terms, makes an exception where the purchase money, or any part thereof, has been paid. It then becomes important to determine what is meant by "purchase money." That has been settled by numerous previous decisions of this court. Thus, in *Devin v. Himer*, 29 Iowa, 297, it is held that such term means the consideration received, in whatever form it may exist. See, also,

*Mitchell v. Colby*, 95 Iowa, 202. In many cases the performance of services has been held to be the payment of the purchase price. *Bonnon v. Urton*, 3 G. Greene, 228; *Stem v. Nysonger*, 69 Iowa, 512; *Franklin v. Tuckerman*, 68 Iowa, 572, and cases cited. The cancellation of a pre-existing indebtedness has also been held to be part payment. *Peake v. Conlan*, 43 Iowa, 297. At common law neither marriage nor the performance of services was sufficient to take the case out of the statute. *Wallace v. Long*, 105 Ind. Sup. 5 2 (5 N. E. Rep. 666, 55 Am. Rep. 222); *Peek v. Peek*, 77 Cal. 106 (19 Pac. Rep. 227, 1 L. R. A. 185, 11 Am. St. Rep. 244); *Ducie v. Ford*, 8 Mont. 233 (19 Pac. Rep. 414); *Maddison v. Alderson, supra*. When it is conceded that the contract between plaintiff's father and Cochrane is supported by a sufficient consideration, whether past or present, it follows that Cochrane has received that consideration, and the agreement, by the express language of the statute, is enforceable. The consideration has been paid. But it is said that the consideration had no reference to this particular tract of land, because Cochrane did not own it when he made the promise. We have seen that whatever of ambiguity or uncertainty there may have been in the contract when first made was rectified by the parties, who thereafter fixed and identified the tract intended to be conveyed. That this was more than two years after the child was named is unimportant, for, under our own cases, uncertainty in the original contract may be cured at any time before attempt is made to enforce it. See cases heretofore cited, and particularly *Collins v. Vandever*. This latter case also answers the suggestion that there was no mutuality in the contract. It is therefore entirely immaterial whether we say that what the parties did after the naming of the child made that certain which was theretofore uncertain, or that it amounted to a new contract, based upon a past legal consideration. If the former, the designation

of the land related back to the making of the original agreement, and the land is thus identified; and, if the latter, the consideration, being past, was treated by Cochrane as a present and continuing one, and it is so connected with the land in question that the objects and purposes of the statute are as fully conserved as if the consideration had been so much money received by Cochrane, or was past services rendered at his request, and for which he agreed to convey the land. When part payment of the consideration alone is relied upon as taking a case out of the statute, the identification of the land must always rest in parol, and it is no objection to the enforcement of the contract that there is nothing in the act performed which serves to identify the land. Under common-law rules, as modified by equitable exceptions, which were introduced for the purpose of preventing the statute from becoming an instrument of fraud, appellants' contention would undoubtedly be sound, and the authorities relied upon by them in point. But under our statutory exceptions the rule is so much broader that the cases on which they rely are not controlling. Counsel practically concede in argument that the contract, if valid, is not within the statute, and we may well accept their concession, in view of the provisions of our statute. The parties, by agreement, brought consideration and subject-matter together, and, if the consideration was paid, there was no necessity for any writing. The uncertainty of the subject-matter does not in any manner affect the consideration, nor cancel the legal obligation Cochrane was under in virtue of the child's having been named for him, at his request. Should we treat the contract as void for uncertainty, there was nevertheless a legal obligation on the part of Cochrane, which was a sufficient consideration for his subsequent promise; and, when he agreed to give a certain tract of land in satisfaction of that obligation, he as surely received the consideration as if plaintiff's father had canceled a debt which he held

against him. This latter, as has been seen, is sufficient to take a case out of the statute. In *Palmer v. Albee,* 50 Iowa, 429, there was no attempt to show that the parties had subsequently agreed upon the land, which was described with such uncertainty that it could not be identified. The case was decided upon a demurrer to the petition, and it is clear that the description was so uncertain that a court of equity could not enforce it. Moreover, there was no subsequent promise, as in this case. If it be said that the contract, as originally made, was void for uncertainty, this did not relieve Cochrane of an obligation on his part. Keener, Quasi Contract, p. 326 *et seq.* He had received the benefits of the contract, and, when he thereafter agreed to give the land in satisfaction of this obligation, he made a valid and binding contract, based upon an adequate consideration received by him. The law will not attempt to measure the benefits received by him in the perpetuation of his name. He said it was worth the 40 acres of land, and courts should accept him at his word. In many states, equity has specifically enforced parol contracts made in consideration of services performed, which were not in writing, in the absence of a statute such as our own. *Carney v. Carney,* 95 Mo. 353 (8 S. W. Rep. 729); *Warren v. Warren,* 105 Ill. 568; *Lester v. Lester,* 28 Grat. 737; *Hinkle v. Hinkle,* 55 Ark. 583 (18 S. W. Rep. 1049). But other courts have refused to enforce them. Our statute was undoubtedly passed to settle this proposition; and there is no doubt, under our decisions, that performance of services, like the payment of money, is alone sufficient, in itself, to take a case out of the statute of frauds.

These views seem to dispose of the case, but the writer and perhaps some other members of the court are satisfied not only that the case is taken out of the statute by reason of the payment of the purchase price, but for the further reason that plaintiff's father took possession of the land

under the contract with the express consent of Cochrane, held it, made improvements thereon, and otherwise treated it as belonging to his son, for nearly the whole time after it was purchased, down to the time of the commencement of this action. This with payment of the purchase price, would, under all the authorities, take the case out of the statute. There is no other ground on which to account for the conduct of the parties, unless we indulge in surmises which to my mind are not justified by the evidence. It is cold comfort to say to the plaintiff in this case that, while Cochrane's obligation to him has not been extinguished, he cannot have the land which was purchased for him, but must sue some one for damages, or, rather, for benefits conferred, in taking Cochrane's name. The measure of damages in such a case would be rather difficult to estimate. This is another reason for enforcing the contract. Of course, if it is clearly within the statute, or is so uncertain that it should not be enforced, these equitable considerations must stand aside. There is, however, no tenable objection to the enforcement of the contract.

The trial court saw and heard the witnesses, and was in a better position than we to weigh their evidence, and it is some consolation to know that its conclusion as to the facts coincides with the finding herein made.

The decree is right, and it is *affirmed.*

McClain, J. (dissenting).—Two propositions of law are announced in the majority opinion to which I cannot give assent, to wit: First, that a contract to convey land can be modified by subsequent parol agreement so as to apply to land not covered by or contemplated in the original contract, there being no payment of purchase price or taking of possession which has reference to such subsequent agreement; second, that an oral agreement to convey land on a past consideration is not within the statute of frauds.

It is elementary that a contract so indefinite as to subject-matter that it is impossible to determine to what the agreement of the contracting parties relates, or to know that as to the matter under consideration there was a meeting of the minds of such parties, is void for uncertainty and of no effect. *Church v. Noble*, 24 Ill. 291; *Atkins v. School Tp.*, 77 Ind. 447; *Thompson v. Gortner*, 73 Md. 474 (21 Atl. Rep. 371); *Wainwright v. Straw*, 15 Vt. 215 (40 Am. Dec. 675); *Erwin v. Erwin*, 25 Ala. 236; *Cole v. Clark*, 3 Pin. (Wis.) 303; *Guthing v. Lynn*, 2 Barn. & Adol. 232.    Pertinent quotations might be made from many of these cases, but it is sufficient here to cite them. That the expression "40 acres of land," without other designation, described nothing to which the alleged agreement in connection with the naming of plaintiff could be considered as having relation, is clear.    Forty-acre tracts of land—even agricultural land—cannot be regarded as interchangeable.    Would it have been competent for plaintiff's father to have selected and demanded under the agreement any one of the various tracts containing 40 acres which he might select out of the land owned by Cochrane when his promise was made,—for instance, the 40 on which his farm buildings were situated?    On the other hand, could Cochrane have properly tendered the poorest 40-acre tract he owned?    It is plain that, until the parties attempted to agree further as to the specific land which was to pass, there was no agreement for conveyance which could have been enforced in behalf of plaintiff. The majority say, "*Id certum est quod certum reddi potest;*" but I had supposed that this maxim related solely to the establishment of a preexisting valid contract, and not to the creation of a new contract; that is, that it applied only when the parties had indicated and agreed upon some means by which the uncertainty might be removed, or the evidence tended to show the understanding of the parties when the contract was made.    It is true that sub-

sequent acts of the parties to a contract may be shown for the purpose of construction in the case of a latent ambiguity, and that is the rule supported by the cases which the majority cite. Such evidence is not received for the purpose of showing a new agreement. If any of the cases cited go beyond this, they clearly, as it seems to me, go beyond reason and the weight of authority. Undoubtedly the parties to a valid contract may by mutual agreement change it, and become bound by a subsequent agreement based upon the consideration of mutual relinquishment of rights under the previous agreement, but how can there be any such relinquishment in consideration of the new agreement if the first agreement was so indefinite as to confer no rights? Undoubtedly, also, if one party to the contract which is void for uncertainty has parted with a consideration, he may recover back its value; and I should not object to an allowance to plaintiff, as against Cochrane's estate, in a proper proceeding, of the money value of any detriment he suffered or any advantage Cochrane gained by the affixing to plaintiff of Cochrane's name as a Christian name. Until there was a new agreement, this was the measure of plaintiff's right. I might further admit, for the sake of argument, that the parties could subsequently agree upon the conveyance of this particular 40-acre tract in extinguishment of the indefinite claim arising to plaintiff from the transaction, provided the agreement was reduced to writing or possession was given as contemplated by the statute of frauds. In other words, if, in view of plaintiff's having been named for Cochrane with the understanding that he was to have some pecuniary benefit, Cochrane should subsequently have agreed to give plaintiff $10,000. I will admit for present purposes that such subsequent agreement was based on a valid consideration but the fact that the intention to make a pecuniary return for the name was indicated by the expression of an intention to give him 40 acres of land would not,

make the case any stronger. The fundamental difficulty is that the statute of frauds requires that an agreement to convey lands shall be in writing, even though there is a valid consideration and the question here is whether or not in this case the subsequent agreement to convey specific land was taken out of the statute of frauds, for it seems to me perfectly clear that whether the contract itself is void because not made in contemplation of any specific land, or whether it refers to specific land, and the attempt is subsequently made to substitute other land than that originally intended, any substitution or new agreement must be in writing, or taken out of the statute by some exception. See *Land Co. v. Jackson*, 121 Ala. 172 (25 South. Rep. 709, 77 Am. St. Rep. 46). Will it do to say that, under a valid contract to convey particular land, the parties may by subsequent oral agreement, without any new payment of purchase price and without any changing of possession, substitute wholly different land from that intended when the first contract was made?

We reach, then, the second proposition of the majority opinion,—that a past and wholly executed consideration, having at the time of its execution no relation to the agreement subsequently sought to be supported by it, is a sufficient "payment of the purchase price" to take the contract out of our statute of frauds as to contracts for the conveyance of lands. If this proposition is sound, then there can hardly be any imaginable contract to convey, which has a sufficient consideration to support it, that will not be within the statutory exception. Any relinquishment of a claim or advantage, no matter how vague or indefinite, and established by parol evidence alone, will justify the introduction of parol evidence of an agreement to convey. And why stop here? Is not an oral and binding agreement to pay in the future just as much the payment of the purchase price, by way of furnishing a consideration, as an oral agreement to release a claim? It may

be the legislature ought to repeal the statute of frauds as to contracts to convey land, and allow such agreements, based on considerations, executed without reference to the contract, to be established by parol evidence, but I am not yet willing to do this by judicial legislation. The construction of the words "payment of the purchase price" for which I contend is payment of the price or execution of the consideration, whatever it may be, with direct reference to and in reliance on the very parol argeement to convey which is sought to be enforced. As the majority aptly say, there are very few authorities on the precise question, because the exception found in our statute is not in the statute of frauds as enacted in England, or in most of the states of this Union, and goes further than that of part performance recognized by courts of equity. But for this very reason I think it should not be extended beyond the meaning plainly indicated by the language used. It is said that it is not the policy of courts of equity to enlarge the exceptions to the statute of frauds ( *Webster v. Gray*, 37 Mich. 37), and I think it is equally impolitic for courts of law to extend them by unreasonable interpretation. The construction for which I contend, which would limit "payment of the purchase price" to something done in reliance upon the specific agreement to convey which is sought to be brought within the exception, is supported by the reasoning in the following cases: *Ellis v. Carey*, 74 Wis. 176 (42 N. W. Rep. 252, 4 L. R. A. 55, 17 Am. St. Rep. 125); *Atlee v. Bartholomew*, 69 Wis. 43 (33 N. W. Rep. 110, 5 Am. St. Rep. 103); *Maddison v. Alderson*, 8 App. Cas. 467. The majority cite many cases in regard to the sufficiency of a past consideration to support a contract, but none of them relate to past consideration as constituting "payment of the purchase price," or similar expressions used with reference to the provisions of the statute of frauds in relation to the conveyance of land.

If the affirmance were based solely on the ground that the evidence shows the taking of possession and making of improvements by James O. Daily, I should not dissent, though I am satisfied that such evidence does not clearly and satisfactorily establish (as it should do in order to bring the case within the exception of taking and holding possession with the actual or implied consent of the vendor, as recognized by Code, section 4626) that possession was ever taken by James O. Daily or improvements made by him under the alleged contract. *Lich v. Lich*, 81 Iowa, 84; *Benedict v. Bird*, 103 Iowa, 612; *Mahana v. Blunt*, 20 Iowa, 142; *Lake Erie & W. R. Co. v. Michigan Cent. R. Co.*, (C. C.) 86 Fed. Rep. 840.